Case: 2:10-cv-00119-EAS-TPK Doc #: 15 Filed: 11/23/10 Page: 1 of 15 PAGEID #: 92

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANWER OMAR,**
    **Plaintiff,**

v.

    **Case No. 2:10-CV-119**
    **JUDGE EDMUND A. SARGUS, JR.**
    **Magistrate Judge Terence P. Kemp**

**ERIC HOLDER, et al.,**
    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Dismiss for Lack of Jurisdiction (D.E. 4). For the reasons that follow, the motion is denied. Additionally, the decision of the United States Citizenship and Immigration Services, dated March 28, 2010, denying the naturalization application of Anwer Omar, is vacated as *ultra vires*.

### I. Background

Plaintiff Anwer Omar brings this action for mandamus and declaratory relief in which he seeks a judicial determination of his naturalization application and a declaration that he is entitled to be naturalized. The Defendants in this action are Eric Holder, Attorney General, United States Department of Justice; Janet Napolitano, Secretary, Department of Homeland Security; Alejandro Mayorkas, Director, United States Citizenship and Immigration Services; Mark Hansen, District Director, United States Citizenship and Immigration Services; and Robert S. Mueller, III, Director, Federal Bureau of Investigation. Plaintiff seeks relief under the Immigration and Nationality Act, 8 U.S.C. § 1447(b), the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act,

28 U.S.C. § 2201, et seq. Plaintiff invokes this Court's federal question jurisdiction under 28 U.S.C. § 1331.

Plaintiff is a citizen of Jordan. It is undisputed that he became a lawful permanent resident of the United States on May 20, 2004, based upon his marriage to United States citizen Donna Frazier.[1] (Attach. to Form N-335 ("N-335 Attachment") at 1, attached as Ex. 1 to Pl.'s Resp. to Mot. to Dismiss, D.E. 5). On March 2, 2009, Plaintiff filed an Application for Naturalization, Form N-400, with the United States Citizenship and Immigration Services ("CIS"). (N-335 Attachment, at 2, ¶ 2.) In accordance with Section 316(A) of the Immigration and Nationality Act ("INA"), Plaintiff appeared before a CIS officer on June 29, 2009 for an examination of Plaintiff's Application for Naturalization. (N-335 Attachment, at 1, ¶ 1.) According to Plaintiff, he "satisfied all of the respective requirements, responded truthfully to all questions, and provided all requested information to the USCIS officer who conducted the examination." (Compl. ¶ 16.) Plaintiff also avers that he passed the required language, history, and civics tests at that time. (Compl. ¶ 16.)

As of February 11, 2010, when CIS had taken no further action on his naturalization application, Plaintiff initiated this case as authorized by 8 U.S.C. § 1447(b). During the pendency of this suit, on February 16, 2010, CIS issued a Request for Evidence requiring Plaintiff to provide documentation of his irrevocable divorce from his first wife, Ebtisam

---

[1] Plaintiff's marriage to Donna Frazier was his second marriage. His first marriage, to Ebtisam Qatoum, ended in divorce, the timing of which is the subject of dispute between the parties to this action. Plaintiff alleges that his marriage to his first wife ended on January 21, 2003, and that, under Sharia law, the divorce was revocable for a three-month period after that date and automatically became irrevocable on April 21, 2003, by virtue of Plaintiff's election not to revoke the divorce during the three-month period of revocability. Defendants contend that his divorce did not become legally final until March 4, 2010. This question is not ripe for decision.

2

Qatoum. ("N-335 Attachment" at 2.) Plaintiff provided the requested information on March 12, 2010. *Id.* The CIS interpreted the documentation provided by Plaintiff as evidence that his first marriage had not been terminated before he married his second wife and that he had therefore given false testimony to the CIS by declaring otherwise under oath at his naturalization examination and on his application forms for both naturalization and permanent residency. *Id.* Accordingly, the CIS found that Plaintiff lacked good moral character and denied his naturalization application on that basis on March 29, 2010. *Id.* Two days later, on March 31, 2010, CIS issued a Notice to Appear ("NTA") informing Plaintiff that he was subject to removal and that he was required to appear before the Immigration Court at a date and time to be set. (Notice to Appear, attached as Exhibit 2 to Pl.'s Resp. to Mot. to Dismiss, D.E. 5.)

Defendants move for dismissal for lack of subject-matter jurisdiction based on mootness. Plaintiff filed a response in opposition, contending that the case continues to present a live controversy. In their reply brief, Defendants assert the following additional grounds for dismissal: (1) lack of subject-matter jurisdiction, under Rule 12(b)(1), for failure to exhaust administrative remedies; and (2) and failure to state a claim upon which can be granted under Rule 12(b)(6), predicated on the pendency of removal proceedings. Plaintiff did not file a sur-reply or seek leave to do so to address Defendant's additional grounds for dismissal.

## II. Analysis

When considering a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must apply one of two standards, depending on the nature of the defendant's challenge. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). If the challenge is directed to the factual basis for jurisdiction, the court must weigh the

3

evidence presented, and the plaintiff bears the burden of proving that a basis for subject-matter jurisdiction exists. *Id.* If, however, the defendant asserts a facial challenge the court's subject-matter jurisdiction, the court must, in effect, resolve the motion on the same standard as a Rule 12(b)(6) motion, treating all of the facts alleged in the complaint as true. *Id.*

As for Defendants' challenge to the merits of the complaint, Federal Rule of Civil Procedure 12(b)(6) requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A. Mootness

Defendants filed their motion to dismiss for lack of subject-matter jurisdiction on the ground of mootness. Federal courts are courts of limited jurisdiction. *United States v. Paull*, 551 F.3d 516, 533 (6th Cir. 2009). Without jurisdiction defined by the Constitution and granted by statute, federal courts lack the power to adjudicate claims. *Id.*

Regarding mootness, "Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). To remain live, a case or controversy must be "extant at all stages of review, not merely at the time the complaint was filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). "[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome[,] a case is moot[,]" and a federal court has no

4

constitutional authority to resolve the issues that it presents. *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006). In evaluating mootness, a court must determine "whether the relief sought would, if granted, make a difference to the legal interests of the parties . . . ." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (internal citation and quotation marks omitted).

In the case at bar, the Defendants contend that the complaint is moot because Plaintiff received all of the relief to which he was entitled under § 1447(b) when his naturalization application was decided by CIS on March 28, 2010. This contention rests on the assumption that CIS retained the necessary authority and jurisdiction to decide the application. In his response, Plaintiff argues that the filing of his § 1447(b) petition vested the district court with exclusive jurisdiction to adjudicate Plaintiff's naturalization application. He claims that, because CIS did not retain concurrent jurisdiction, the agency lacked authority to deny the application. The question of mootness in this case thus turns upon whether § 1447(b) vests the district court with exclusive or concurrent jurisdiction.

Title 8 U.S.C. § 1447(b) provides as follows:

(b) Request for hearing before district court

If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

The statutory language does not expressly state whether, upon a petitioner's proper filing of a § 1447 petition, a district court's jurisdiction is exclusive of or concurrent with agency jurisdiction.

5

Although the United States Court of Appeals for the Sixth Circuit has not decided this issue (*see Rahmen v. Napolitano*, No. 09-3437, 2010 U.S. App. LEXIS 14296, at **14-15 (6th Cir. July 13, 2010) (declining to reach question)), the circuit courts that have done so have held that the proper filing of a § 1447(b) suit vests the court with exclusive jurisdiction over the matter. *See Bustamante v. Napolitano*, 582 F.3d 403, 405 (2d Cir. 2009) ("only the district court has jurisdiction over a naturalization application once an applicant files a proper Section 1447(b) petition"); *Etape v. Chertoff*, 497 F.3d 379, 383 (4th Cir. 2007) (filing of "a proper § 1447(b) petition vests the district court with exclusive jurisdiction"); *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) ("Section 1447(b) allows the district court to obtain exclusive jurisdiction over those naturalization applications on which the INS fails to act within 120 days if the applicant properly invokes the court's authority."). Moreover, the majority of district courts, including courts in the Sixth Circuit, that have decided this question have also held that once a 1447(b) petition is filed in district court, the CIS loses jurisdiction to adjudicate the naturalization application unless and until the district court remands the matter to the agency. *See Lucaj v. Dedvukaj*, No. 09-CV-14716-DT, 2010 U.S. Dist. LEXIS 98724, *22 (E.D. Mich. September 21, 2010) (construing § 1447(b) as vesting district court with exclusive jurisdiction); *Elaasar v. Mueller*, 522 F.Supp 2d 932, 934-36 (N.D. Ohio 2007) ("Title 8 U.S.C. § 1447(b) not only provides the [district court] with subject matter jurisdiction but provides it exclusive of any actions by USCIS."); *see also Agarwal v. Napolitano*, 663 F.Supp 2d 528, 530-33 (W.D. Tex. 2009) (holding that district court has exclusive jurisdiction and collecting cases); *Popnikolovski v. United States Dep't of Homeland Security, Citizenship and Immigration Services*, - - - F.Supp. 2d - - -, 2010 WL 2836698, at *4 (N.D. Ill. July 14, 2010) (holding that exclusive jurisdiction

6

rests in district court).

Defendants cite two district court cases that they contend provide support for their position that CIS retained concurrent jurisdiction. These cases do not carry the load Defendants suggest they do. In one, *Kochary v. Dep't of Homeland Security*, No. 3:08-0724, 2009 WL 211045 (M.D. Tenn. Jan. 26, 2009), the United States District Court for the Middle District of Tennessee explicitly declined to determine whether CIS had jurisdiction to take any action where CIS had granted the petitioner's naturalization application, thereby conferring the relief the petitioner had sought. In the other, *Perry v. Gonzales*, 472 F. Supp.2d 623 (D.N.J. 2007), the United States District Court for the District of New Jersey, in holding that CIS had concurrent jurisdiction to grant the petitioner's naturalization application after the filing of the § 1447(b) petition, relied largely on a district court case that was later reversed, *Etape v. Chertoff*, 446 F. Supp.2d 408 (D.Md. 2006), *rev'd*, 497 F.3d 379, 383 (4th Cir. 2007).

The Court is persuaded both by the weight of authority and the rationale set forth therein that, once Plaintiff filed a § 1447(b) petition, the Court was vested with exclusive jurisdiction over this matter, and CIS lacked authority to make a final determination on Plaintiff's naturalization application unless and until the Court were to remand the matter to CIS.[2] As *Bustamante*, *Hovsepian*, and *Etape* observe, the plain language of the statute authorizes the district court to determine the naturalization application or to remand the matter to CIS with instructions. "The authority granted to the district court by Section 1447(b)–to 'determine' the

---

[2]The Court recognizes that merely because a plaintiff seeks judicial intervention does not mean that the CIS is barred from further consideration of the plaintiff's application or from making a tentative determination. It may not, however, make final determination unless and until the matter is remanded. *See Bustamante*, 582 F.3d at 408.

7

merits of the application or to 'remand' the application to USCIS–establishes that a properly filed Section 1447(b) petition vests jurisdiction in the district court and divests USCIS of its jurisdiction to decide the application." *Bustamante*, 582 F.3d at 406. "It would be illogical . . . for Congress to vest the district court with jurisdiction 'to determine the matter' upon the filing of a Section 1447(b) . . . but permit USCIS to have simultaneous authority to decide the application." *Id.* (citing *Etape*, 497 F.3d at 383 and citing *Hovsepian*, 359 F.3d at 1160). In addition, "[b]y providing the district court with the option to 'remand the matter, with appropriate instructions, to [USCIS],' . . . Congress intended that, after an applicant files a proper Section 1447(b) petition, USCIS would lack the authority to decide an application absent a remand." *Id.* (citing *Etape*, 497 F.3d at 384 and citing *Hovsepian*, 359 F.3d at 1160). An alternate reading would permit the agency to strip the court of jurisdiction by issuing a decision before a court issued a remand order instructing the agency how to proceed with the matter and "would render the 'remand' language in the statute meaningless." *Id.* (citing *Etape*, 497 F.3d at 384 and citing *Hovsepian*, 359 F.3d at 1160).

In this case, Plaintiff properly filed his § 1447(b) petition more than 120 days after USCIS performed its examination. This Court therefore has subject-matter jurisdiction. This jurisdiction is exclusive of any action by USCIS. Although USCIS later made a determination on Plaintiff's application, the Court is not bound by that decision, and the Court retains power either to review the merits of Plaintiff's naturalization application or to remand the case with appropriate instructions. Therefore, Plaintiff's claim before this Court was not rendered moot by CIS's tentative decision on his naturalization application, and the case continues to present a live controversy. *See Lucaj*, 2010 U.S. Dist. LEXIS 98724, at *22; *Elaasar*, 522 F.Supp2d 932 at

936; *Agarwal*, 663 F.Supp. 2d at 534-35.

In addition, an agency lacking jurisdiction cannot render a final decision, and therefore a decision by CIS after an applicant has filed a complaint in district court pursuant to § 1447(b) is void. *See Agarwal*, 663 F. Supp. 2d at 534-35; *Castracani v. Chertoff*, 377 F. Supp.2d 71, 75 (D.D.C. 2005) ("When [the applicant] did file suit on July 1, 2004, this court obtained exclusive jurisdiction over his naturalization application. . . . Therefore, in the absence of any evidence indicating that [CIS] approved [the] application before July 1, 2004, [the agency]'s adjudication of [the] application is invalid, and jurisdiction lies exclusively with this court to either approve [the] application or remand it to [CIS] with instructions."); *Zaranska v. United States Dep't of Homeland Security*, 400 F.Supp.2d 500, 504 (E.D.N.Y. 2005) ("the Court concludes that the filing of a petition in district court pursuant to § 1447 strips the CIS of jurisdiction, [and therefore], a denial issued by the CIS after the petition is filed cannot have any effect . . . .") Accordingly, in this action, CIS's purported determination of Plaintiff's naturalization application on March 28, 2010 is ineffective because the agency lost its power to decide Petitioner's application before it issued the denial.

In light of the foregoing, the Court concludes that Plaintiff's complaint cannot be dismissed on the ground of mootness.

## B. Alternate Grounds for Dismissal

In their reply brief, Defendants assert for the first time additional grounds they believe support dismissal of this action. Specifically, they argue that this Court lacks subject-matter jurisdiction over Plaintiff's claims because he failed to exhaust his administrative remedies with respect to the denial of his application. In addition, they contend that Plaintiff has failed to state

9

a claim upon which relief can be granted because once removal proceedings were instituted against plaintiff, § 1429 bars this Court from granting the relief Plaintiff seeks. As an initial matter, the Court observes that these grounds are not properly asserted for the first time in a reply brief because Plaintiff has no opportunity to respond. Nevertheless, in the interest of judicial economy and to avoid further delay, the Court has considered the asserted alternate grounds for dismissal and finds them to be without merit.[3]

1. *Failure to Exhaust Administrative Remedies*

Generally, an immigration plaintiff must exhaust all available administrative remedies before seeking judicial review. *See Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002) (construing 8 U.S.C. 1252(a)(2)(B)). Defendants in this action argue that the statutory and regulatory language governing judicial review of the denial of a naturalization application requires the applicant to secure a hearing before an immigration officer as a prerequisite to filing suit in federal court. In support of their position, they rely on 8 U.S.C. §§ 1447(a) and 1421(c) and implementing regulation, 8 C.F.R. § 336.9 . However, these provisions by their terms apply to judicial review of a determinations by CIS to deny a naturalization application. Title 8 U.S.C. § 1421(c) provides:

( c) Judicial review

    A person *whose application for naturalization under this subchapter is denied,* after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

---

[3]Because these bases for dismissal are meritless, the Court finds it unnecessary to request additional briefing by Plaintiff.

10

In turn, Title 8 U.S.C. § 1447(a) states that "[i]f, after an examination under section 1446 of this title, *an application for naturalization is denied*, the applicant may request a hearing before an immigration officer." Similarly, section 336.9 of the Code of Federal Regulations provides, in pertinent part:

> (d) Exhaustion of remedies. A Service determination *denying an application for naturalization* under section 335(a) of the Act shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section 336 of the Act.

8 C.F.R. § 336.9(d). Thus, under the statutory scheme, when CIS denies an application for naturalization, the applicant must first pursue an administrative appeal of the decision by requesting a hearing before an immigration officer. If the immigration officer upholds the denial, the applicant may then seek a de novo review of that determination in federal district court. Here, however Plaintiff initiated this action not to challenge the denial of his application for naturalization under § 1421(c) but to seek judicial intervention under § 1447(b) based upon CIS's failure to decide his application within 120 days of his examination. CIS's subsequent action on the application does not transform Plaintiff's petition into a request for judicial review of an application denial pursuant to § 1421(c). In sum, the exhaustion requirement applies only to 1447(c) petitions for review of final denial; where, as here, relief is sought pursuant to 1447(b), there are no administrative remedies for Plaintiff to exhaust. *See Hovsepian*, 359 F.3d at 1162-63 ("In the light of § 1421(c), therefore, § 1447(b) is best viewed as a mechanism by which naturalization applicants who are impatient with [CIS] delay may skip the agency's analysis of their application and proceed directly to the [district court's] review of the application"); *Popnikolovski*, - - - F.Supp.2d - - - , 2010 WL 2836698, at *7 ("Plaintiff's alleged failure to

11

exhaust his administrative remedies does not preclude [court's determination of application]; the statutory provision Defendants invoke, 8 U.S.C. 1421 (c), is applicable in situations where, unlike here, the applicant's claim for naturalization has been decided."); *Alkenani v. Barrows*, 356 F.Supp.2d 652, 655 (N.D.Tex.,2005) (petition filed pursuant to 1447(b) has no predicate administrative remedies for petitioner to exhaust); *Zaranska*, 400 F.Supp.2d at 504 (because the filing of a § 1447(b) petition "strips the CIS of jurisdiction, a denial issued by the CIS after the petition is filed cannot have any effect, and § 1421(c) therefore becomes irrelevant to the analysis."); *Meyersiek v. United States Citizenship and Immigration Service*, No. CA 05-398 ML, 2006 U.S. Dist. LEXIS 37255 (June 6, 2006 D.R.I.) (Section 1447(b) petitioner "not required to complete the administrative review process before he has his day in court"). In light of the foregoing, the Court finds no merit in Defendants' contention that Plaintiff's claims must be dismissed for failure to exhaust administrative remedies.

2. *8 U.S.C. §1429 and Removal Proceedings*

As the second alternate ground for dismissal asserted in their reply brief, Defendants claim that 8 U.S.C. § 1429 bars this Court from granting Plaintiff the relief he seeks, and that, therefore, Plaintiff has failed to state a claim upon which relief can be granted. Section 1429 provides in relevant part:

> "[N]o application for naturalization shall be considered by the Attorney General if there is *pending against the applicant a removal proceeding* pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act[.]

8 U.S.C. § 1429 (emphasis added). Defendants contend that, because Plaintiff was issued a Notice to Appear in removal proceedings, this Court lacks the power to grant an effective

12

remedy. *See Zayed v. United States*, 368 F.3d 902, 907 (6th Cir. 2004) (removal proceedings commencing after filing of 1421(c) petition for review of application denial precluded court from granting relief sought by petitioner while removal proceedings were pending). The issuance of a Notice to Appear, however, does not commence removal proceedings. Rather, "[e]very removal proceeding . . . to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court." 8 C.F.R. § 1239.1; *see also Asad v. Reno*, 242 F.3d 702, 705 (6th Cir. 2001) ("[removal] proceedings commence when the appropriate charging document is filed with the Immigration Court").

In this case, Defendants make no argument or point to any undisputed facts evidenced in the record that the Notice to Appear issued to Plaintiff was filed with the immigration court, thereby commencing removal proceedings. Absent evidence that removal proceedings have commenced, the Court has no basis for finding that removal proceedings are "pending." *See Hovsepian*, 359 F.3d at 1165; *Agarwal*, 663 F. Supp.2d at 535-36 and 536 n. 3; *Lucaj*, 2010 U.S.Dist.LEXIS 98724, at *28. Accordingly, the Court concludes that § 1429 erects no bar to the relief Plaintiff seeks in these proceedings, and Plaintiff has stated adequate factual allegations to survive a motion to dismiss for failure to state a claim upon which relief can be granted.

### C. Remedy

Having determined that it has exclusive jurisdiction over this matter and that § 1429 does not bar the relief sought by Plaintiff, the Court now considers the appropriate course of action. Pursuant to the statutory terms governing this action, the Court may either remand the case to CIS for further administrative proceedings or retain it to determine the merits of the naturalization application. *See* 8 U.S.C. § 1447(b). Neither the statute nor its implementing

13

regulations offer direction about the factors a court should consider when determining whether to remand or retain the action. Courts thus have broad discretion in making that determination.

Courts that elect to remand typically do so in cases where the required FBI background check or some other portion of the application process has not been completed. *Issa v. Mueller*, 486 F.Supp.2d 668, 674 (E.D. Mich. 2007); *see also Musaad v. Mueller*, 627 F.Supp. 2d 804, 809 (S.D. Ohio 2007) (remanding for completion of background checks and instructing CIS to act expeditiously on application once results of background check are received); *Affaneh v. Hansen*, No. C-3-06-267, 2007 WL 295474, *4 (S.D. Ohio Jan. 29, 2007) (same); *Helmi v. Dep't of Homeland Security*, No. 07-13826, 2007 WL 4557708, *3 (E.D. Mich. Dec. 21, 2007) (same); *Al Saleh v. District Director, USCIS Detroit*, No. 06-13372, 2007 WL 925693, *3 (E.D. Mich. Mar. 28, 2007) (same). Those courts that have retained jurisdiction most commonly do so in instances where CIS's delay has been particularly lengthy. *See Taalebinezhaad v. Chertoff*, 581 F.Supp. 2d 243, 246 (D.Mass. 2008) (and cited cases); *see also Omran v. Dep't. of Homeland Security*, No. 07-187, 2008 WL 320295, *3, 5 (S.D. Ohio Feb. 4, 2008) (retaining jurisdiction in view of protracted agency delay in deciding application).

Guided by the above-cited cases, the Court believes at this time that retaining jurisdiction is the proper course of action. Defendants do not claim that the FBI background investigation remains pending. Indeed, given that the basis for CIS's ultra vires denial of Plaintiff's naturalization application omitted mention of any criminal history or national security concerns, the FBI background would appear to have been completed. Moreover, although the 227-day delay between Plaintiff's application examination and the filing of this suit was not egregiously long, Defendants have not requested remand.

14

### III. Conclusion

In light of the foregoing, Defendants' Motion to Dismiss (**Doc. #4**) is **DENIED**. It is ordered that the purported adjudication of Plaintiff's naturalization application by CIS on March 28, 2010, be and hereby is **VACATED** as *ultra vires*. A hearing to determine the merits of Plaintiff's naturalization application will be scheduled by separate order of this Court.

**IT IS SO ORDERED.**

11-22-2010
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**